This case is U.S. Well Services, and let me correct myself in the previous case. It's no longer against Howard Brookman, it's against Stewart, acting director of the PTO. And this is 2223-1692. Mr. Valdez. Good morning again, Your Honors, and may it please the Court. The patent issuing this appeal concerns a method of pump-down operations, pumping a tool down to a wellboard. And the novel aspect of the claim is the use of a boost pump to pump down the tool into the wellboard. And it's a three-priority combination in terms of the obviousness. Conrad, Neal, and Coley. The Court's familiar with Coley already. Conrad. The boost pump, that's all it does? That's its sole purpose is to help pump down the tool down the wellboard? As claimed in this invention, yes, Your Honor. But there are, in the industry, there are different types of boost pumps. And our primary argument addresses and tries to attack the Board's motivation to combine these references. And the Board and Halliburton presented basically two arguments, reducing excessive wear and tear and avoiding cavitation. Also, do you agree that the secondary considerations issue is no longer, in this case, in the light of our February 13th decision? The February 13th decision, Your Honor? Yeah, in number 23-1796, which rejected your secondary considerations argument for a related patent. Well, I'd say you have to take case by case. But we're not challenging the reasoning of the Court in that decision, or the decision of the Court. So you're not arguing the secondary considerations here anymore? No, we're maintaining our arguments here. We do... But it's the same argument you made in the other case. Same argument, different invention, different claims, and slightly different evidence. So we're going to maintain that argument. But if I could focus on the motivation to combine the three references. And that's the strongest argument we have with respect to the obviousness. And here you have Conrad, Neal, and Coley. Conrad teaches a pump-down operation. No, Conrad teaches the separate pump-down manifold. It's a manifold. The Neal teaches a boost pump. But nowhere in the prior art is there any suggestion to use a boost pump for Conrad's manifold and pump-down operation. And the two reasons that the Board gave, and the two reasons that Halliburton relied on, was cavitation and wear and tear. Wear and tear is just a general, generic-type motivation. We don't think it's sufficient here. With the cavitation, the cavitation is not a sufficient reason here because, Coley, when you're using the electric pumps, that essentially removes and eliminates any concern about cavitation. So unless there are any questions on that position, I would like to turn to two other issues that are raised here. With respect to Claim 8. So Claim 8, we ask that the Court look at the claim construction. The limitation requires a proximate. And there, the key point that we've raised in our briefs is that the Board construed proximate to be equivalent to anywhere on the well site. And that, in our view, is contrary to a plain definition of proximate. Before the Board, we advanced a definition where it meant within the microgrid. And that's supported by Figure 3. And I would point the Court to the Board's analysis on this point. And this is at Appendix 31. And the Board wrote that, although Coley describes its natural gas-powered turbine generators as located in Region C, which is located a remote distance from Region B, where the trailers and fracturing modules are located, both Region C and Region B are on the same site and thus are proximate one another. And when I read that, the Board essentially is equating remote to proximate. And regardless of whatever definition you provide to proximate, it cannot be that proximate is synonymous with remote. And our position is that, at a minimum, when you look at proximate, it has to be within the microgrid. Unless there are any questions on that. If I could turn to one last argument, Your Honors. And this concerns the amended claims. And as the Court knows, we proposed amended claims during the IPR. And one claim term that I would like to focus on is the power not being diverted. And what Halliburton and the Board concluded or argued was that the power not being diverted limitation is equivalent to sufficient. And again, we don't see how that is a reasonable construction of that claim limitation. That's the only way the obviousness decision can stand, is if you look at diverted being equivalent to sufficient. But that's not consistent with the patent specification in terms of the figures where it shows specifically that power is being specified to different pumps, meaning the fracturing pump or the boost pump. And so it's a dedicated source of power. It's not simply a source of power, one source of power that is sufficient to power as many generators or as many pumps that Halliburton might want to argue. So in terms of amended claims 15 through 23, we believe— Did you raise the diverted argument below? Yes, Your Honor, we did. Where is that at? I would look at that on rebuttal, Your Honor. I don't recall offhand right now. All right. So again, unless there are any questions, I'll reserve the rest of my time. So you said you're maintaining the secondary considerations argument, but you're not making an argument. We'll rest on our briefs, Your Honor. All right. Thank you. Mr. Patel. Mr. Patel. May I please report? Fahad Patel with the USPTO. I'd like to respond to my friend's arguments in series. The first contained—the first argument was about the obviousness, motivation to combine, and I think the point that my friend ended on was about the Coley reference. Now, that's the third reference in the combination, and he's arguing that Coley already has cavitation, which is a problem that was kind of known in the art, and thus a person of skill would not have combined the first two references, Conrad and Neal, together. The problem—there's two problems with this argument. The first is that they never made the argument to the board. This argument about Coley not having cavitation, you won't find it in the papers. It was not before the board. There are no findings by the board on that point, but there's very little for us to look at here in detail. The second point on that, and we don't have to go into the nitty-gritty, but this was also in the briefing to this court, is that Coley addresses a different source of cavitation than the Neal reference. So the Neal reference has a boost pump, and the reason to combine Neal with the first reference, Conrad, was to solve the issue of cavitation. So that's what the board found. Now, cavitation shows up in Coley as well, but in a different context. There's a different reason for why cavitation occurs in Coley. In any event, it's sort of besides the point in some ways because the board didn't talk about it, it wasn't before the board, so it's not a reason to reverse the board here. The second issue was about claim construction, and about the claim terms in Dependent Claim 8 is called proximate. And the board did the best it could to construe this term. Proximate is a term of degree, and it's not exactly clear from the specification what proximate means. It's not defined in the specification. It's not used in context with what the claim describes. And so there's really very little guidance about what proximate could mean. The board construed proximate to mean within the same well site. And so it might be actually worth here, just setting this up a little better, is looking at the language of the claims to understand what proximate is referring to. So it's a dependent claim. Independent Claim 1 requires a pump and an electric motor. Those are two components in Claim 1, the pump and the motor. Dependent Claim 8 adds... Oh, it's not. It adds an electric blender. I don't think that's... I think it's better to look at the patent. I don't think that's right, as written in there. I was going to just add an electric blender. I don't think Claim 8 is printed on the blue briefs. It's right. I think it's better to look at Appendix 99. I don't think it's the correct claim there. Appendix 99 is the issued patent with the claim, Claim 8 written, and then the proximate language. So Claim 8 recites, where an electricity that powers the motor is generated with a generator that is proximate the electric motor. So there's a generator that's added by Claim 8, which is proximate to the electric motor that was previously recited in Claim 1. That's how proximate is used. And the term is not used in the spec to describe these two components being any distance from one another. So proximate is not used in the spec to talk about the motor as compared to the generator. And so that's why the board construed proximate to just mean on the same well site, because that's the best it could discern from what the spec says. And there's nothing in the spec that talks about the generator being on the same microgrid as the motor. So that's just simply absent from the way the term is used in the spec. That's the second argument for claim construction. I wouldn't touch on secondary considerations. Why not? Well, I can talk about it. It wasn't raised in argument, but I'm happy to discuss it. It's in the briefs? It's in the briefs. Fair enough. And what's the relevance of the earlier case to the issue here? I think in some ways it's at least informative because, as the court mentioned, the prior case, the evidence is essentially identical to what's being submitted here. Here you have the additional problem of there being a lack of nexus to these claims in particular, because there's really nothing that links what the claims require, the boost pump, the pump-down operation. Well, the expert admitted that the product didn't reflect the claim limit. Yes, absolutely. It's in the expert's deposition. He admitted that it didn't practice the commercial embodiment. Suppose the commercial embodiment did not practice the claim limitation. And so this case can be disposed of, for secondary considerations at least, solely on lack of nexus, without necessarily needing to get into the weeds of the individual secondary considerations evidence. And there was nothing presented on relevant market or sales figures? Correct. License wasn't presented? Absolutely. For commercial success, there was no sales information, no sales numbers given, no market information was given for secondary considerations. On licensing, the licenses weren't provided, so the board couldn't credit that evidence to show that the patent was actually part of a license because we didn't know what the license was and what it said. And, in fact, the evidence that's in the case doesn't even say it was a patent license. It just says it was an IP license. If you look at the Yahoo press release in the case, which is Appendix 1577, it just says a $22.5 million license note purchase convertible to three licenses to build and operate three fleets using U.S. Wells Clean Fleet Technology. So it's a license to technology. It might be a patent license. It might not be a patent license. It might include the authority of the patent. It might not. We don't have a license, so we don't know. And on the copying, again, there's nothing to substantiate the assertions made about certain competitors taking photographs of the commercial product. None of that is cited, too. There's no evidence around it. It's just bare statements from the prosecution history of another patent. It's hard to copy the patent if the commercial product doesn't embody it. That's also a problem, Your Honor, yes. Yes, it goes back to the issue of nexus. There's no linking between the claims and the product. We don't know if the product does what the claims say. The last issue was on the amended claims. And you can look at the blue brief for that one. The amended claims recite that power is not diverted from an associated pump for fracturing. So there's a pump-down pump for performing pump-down operations. And then in Claim 8, there's this idea of a fracking pump, another pump for fracking. So there's two pumps contemplated by Claim 8. And what the claim is saying is that you can't divert power from the fracking pump to the pump-down pump. That's the negative limitation of not diverted. But this is all the claim requires. So it doesn't require a separate power supply. It doesn't require anything like that. All it requires is that power not be diverted from one pump to the other. And this was met by the existing prior art that was applied to the original claims because that prior art simply had a power supply that was sized enough to supply power to both pumps. And that met the limitation of not diverted. And that's all that limitation required. And there was, I think, a forfeiture argument as well to the extent that Appellant is arguing that the claims require two separate power supplies, one for the pump-down and one for the fracking. That wasn't before the board. So that would also be forfeited. Any other questions? We request that the court affirm the board. Thank you. Thank you, Mark. Thank you, Mr. Patel. Mr. Dowd has plenty of time if he needs it. I will only use a short amount of time, Your Honor, with respect to court's time. So in terms of the not diverted... It's useful to get the claims right on the inside cover. You claim that it's not right. My sincere apologies, Judge Dyke. That's an obvious oversight, which... All I can say is we'll do better next time. Okay. So with respect to the not diverted, I think there's support in Figure 3 for that. And, again, there's a difference between diverting and not diverting, ensuring that there's a specific amount of power that's going to the pump-down pump or the boost pump versus the fracking pump versus simply having an overall amount of power available. And then for the proximate limitation, Your Honor, we, again, direct the court's attention to Figure 1A, where 54 is the microgrid, and that's our support for the proximate limitation. And we don't believe that Coley, which only discloses a remote configuration, can in any way be read to be equivalent to a proximate configuration. So unless there are any further questions... How many more of these well services cases are there coming up to us? I believe one more, Your Honor. One more? Yes. Is that scheduled for... It has not been scheduled yet. I believe it will be scheduled in April, maybe June. Okay. I look forward to it. Thank you, Your Honor. Thank you to both counsel. The case is submitted.